UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

DR. DANIEL HALLER and LONG ISLAND
SURGICAL PLLC,

                                Plaintiffs,

– against –

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, 200 Independence
Avenue SW, Washington, DC 20201,

and

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services, 200
Independence Avenue SW, Washington, DC
20201,

U.S. OFFICE OF PERSONNEL
MANAGEMENT, 1900 E Street NW
Washington, DC 20415,

and

KIRAN AHUJA, in her official capacity as
Director of the U.S. Office of Personnel
Management, 1900 E Street NW Washington,
DC 20415,

U.S. DEPARTMENT OF LABOR, 200
Constitution Avenue NW Washington, DC
20210,

and

MARTIN J. WALSH, in his official capacity as
Secretary of Labor, 200 Constitution Avenue
NW Washington, DC 20210,

U.S. DEPARTMENT OF THE TREASURY,
1500 Pennsylvania Avenue NW, Washington,
DC 20220,

and

JANET YELLEN, in her official capacity as
Secretary of the Treasury, 1500 Pennsylvania

Avenue NW Washington, DC 20220,

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by their attorneys, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, complaining of the defendants, allege as follows:

1.   This is an action for a declaration that three provisions of the No Surprises Act, Pub. L. 116-260 (the "Act"), are unconstitutional, and for an injunction prohibiting its enforcement. The provisions in issue are 42 U.S.C. § 300gg-111(c), which determines the rates health care plans are required to pay to out-of-network physicians, *i.e.*, physicians with whom they do not have direct contractual relationships, and establishes an "independent dispute resolution process" to adjudicate disputes with respect to those rates, and 42 U.S.C. § 300gg-131 and 300gg-132, which prohibit physicians from billing patients for the amounts of their fees that the health care plans are not required to pay.

2.   The Act was passed on December 27, 2020, as part of the Consolidated Appropriations Act, 2021. Its requirements generally go into effect on January 1, 2022.

3.   The Act restricts the amount that physicians are entitled to be paid for their services by patients and by health care plans with which the physicians do not have contractual relationships. It impermissibly delegates the authority to determine the physicians' state-created common law claims to an administrative tribunal. It deprives physicians of the right to a jury trial guaranteed to them by the Seventh Amendment to the Unites States Constitution. It violates the Due Process Clause of the Fifth Amendment to the United States Constitution by requiring physicians to adjudicate their claims against health plans in an "independent dispute resolution process" that is

2

not independent at all because the health plans unilaterally define the standard by which the physicians' claims are determined. It takes the physicians' property without just compensation by prohibiting physicians from recovering the balance of the fair value of their services from their patients.

4.    This is also an action under the Administrative Procedure Act to set aside specific provisions of an interim final rule entitled "Requirements Related to Surprise Billing; Part II," 86 Fed. Reg. 55,980 (Oct. 7, 2021) (the "Rule"), issued by the Department of Health and Human Services, the Department of Labor, the Department of the Treasury, and the Office of Personnel Management (collectively, the "Departments") because the Rule is inconsistent with the express terms of the Act.

5.    The Rule purports to implement provisions of the Act with respect to the rate at which physicians must be paid by health plans, but effectively ignores the factors that the Act requires be used in setting the payment rate and, instead, creates a presumption in favor of just one of these factors – the "qualifying payment amount" or "QPA" – which is determined solely by the health plans, and is based on in-network (as opposed to out-of-network) data to which the out-of-network providers are not privy.

## JURISDICTION AND VENUE

6.    The Court has jurisdiction over this action under 28 U.S.C. § 1331.

7.    The Court has the authority to grant the requested declaratory and injunctive relief under the Administrative Procedure Act and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

8.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(C) because this is an action against officers and agencies of the United States and Plaintiffs reside in the Eastern District of New York.

## PARTIES

9.    Plaintiff Dr. Daniel Haller is an acute care surgeon with his principal office at c/o Long Island Surgical PLLC, 2000 North Village Avenue, Rockville Center, New York 11570.

10.    Plaintiff Long Island Surgical PLLC is a New York professional limited liability company with its principal office at 2000 North Village Avenue, Rockville Center, New York 11570.

11.    Plaintiffs are residents of Nassau County, New York, which is within the Eastern District of New York.

12.    Dr. Haller and the other surgeons of Long Island Surgical PLLC perform approximately 2,682 emergency consultations and surgical procedures on patients admitted to hospitals through their emergency departments each year.

13.    Approximately 78% of the patients that Dr. Haller and Long Island Surgical PLLC treat each year are covered by health plans with whom Dr. Haller and Long Island Surgical PLLC have no contractual relationship. With respect to those patients, Dr. Haller and Long Island Surgical PLLC are nonparticipating providers within the meaning of the Act whose fees will be determined by the Act and the procedures it establishes.

14.    Defendant Department of Health and Human Services is an executive department of the United States headquartered in Washington, D.C.

15.    Defendant Department of the Treasury is an executive department of the United States headquartered in Washington, D.C.

4

16.   Defendant Department of Labor is an executive department of the United States headquartered in Washington, D.C.

17.   Defendant Office of Personnel Management ("OPM") is an executive agency of the United States headquartered in Washington, D.C.

18.   Defendant Xavier Becerra is the Secretary of Health and Human Services. Secretary Becerra is sued in his official capacity only.

19.   Defendant Janet Yellen is the Secretary of the Treasury. Secretary Yellen is sued in her official capacity only.

20.   Defendant Martin J. Walsh is the Secretary of Labor. Secretary Walsh is sued in his official capacity only.

21.   Defendant Kiran Ahuja is the Director of OPM. Director Ahuja is sued in her official capacity only.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

22.   A physician who treats a patient is entitled under New York law to be paid for his or her services.

23.   Where there is an agreement between the physician and the patient with respect to the physician's fee, the physician is entitled under New York law to be paid the agreed upon fee.

24.   Where the patient is covered by a health plan and the physician has entered into a contract with the health plan to treat the patient for a particular fee, or for a fee to be determined in accordance with a particular formula, *i.e.*, the physician is "in network," the physician is entitled under New York law to be paid the agreed upon fee by the health plan and customarily agrees to waive recovery of the balance of the fee from the patient.

25.    Where the patient is covered by a health plan and the physician does not have an agreement with that health plan, *i.e.*, the physician is "out-of-network" or "nonparticipating," and the patient assigns his or her right to benefits to the physician, the physician is entitled under New York law to be paid by the health plan in the amount required by the health plan's contract with the patient and the patient is obligated to pay the balance of the amount due to the physician pursuant to the agreement between the physician and the patient.

26.    In those situations where the patient requires emergency services and has not agreed with the physician on the physician's fee, and may not have even spoken with the physician before the services are rendered, the physician is entitled under New York law to be paid for the services he or she has rendered on the basis of an implied contract with the patient.

27.    The amount to which the physician is entitled pursuant to the implied contract is determined, under New York common law, in *quantum meruit*, on the basis of the reasonable value of the services that the physician has provided.

28.    The determination of the reasonable value of services provided by a physician for purposes of a *quantum meruit* claim under New York law involves an analysis of usual and customary charges for the service provided, among other factors.

29.    In October 2014, the New York State Legislature adopted the New York State Emergency Medical Services and Surprise Bill Act (the "New York Surprise Bill Act"). The New York Surprise Bill Act applies where the patient is covered by a health plan regulated by the State of New York, the physician is an out-of-network or nonparticpating provider with respect to that health plan, and the patient has assigned his or her benefits to the physician. Financial Services Law § 605(a).

30.    The New York Surprise Bill Act prohibits an out-of-network physician from billing a patient who receives emergency care (and certain post-stabilization care) for the balance of the physician's fee that the patient's health plan will not pay, but, as under the common law, the physician remains entitled to recover the "usual and customary cost of the service," Financial Services Law § 604(f), an approach one court has described in dicta as "akin to the common law approach."

31.    As a result, under current New York law, including the New York Surprise Bill Act, physicians, including physicians providing services to patients who require emergency services and have not agreed with the physician on the physician's fee, are entitled to be paid the reasonable value of the services they provide to the patient.

32.    The Act deprives the physician of this right under New York law to be paid the reasonable value of the physician's services.

33.    The Act provides that a non-participating provider "shall not bill, and shall not hold [the patient] liable" for any amount beyond what the patient's health plan pays the physician. 42 U.S.C. §§ 300gg-131(a); 300gg-132(a).

34.    The Act also determines the amount that the health plan must pay for the physician's services, regardless of the physician's right under New York law to be paid their reasonable value.

35.    Under the Act, the fee for the physician's services is determined in accordance with either (i) "a specified State law with respect to such plan, coverage, or issuer, respectively," if the state in which the services are provided has such a law; or (ii) "an All-Payer Model Agreement under section 1315a of this title [the Social Security Act];" or (iii) if the state has no such law or agreement and the physician and the health plan cannot agree upon the fee, the amount determined by an "independent dispute resolution process" established by the Act, *i.e.*, by arbitration. 42

U.S.C. § 300gg(a)(3)(H).

36.    The independent dispute resolution process established by the Act is a "baseball-style" arbitration in which the provider and health plan each submit their best and final offers for the amount each considers to be reasonable payment. Specifically, once an arbitrator is selected, the provider and the health plan have 10 days to submit (1) an offer for a payment amount, (2) any information requested by the arbitrator, and (3) any additional information the party wishes the arbitrator to consider, including information relating to statutory factors the arbitrator must consider. 42 U.S.C. § 300gg-111(c)(5)(B), (C)(ii).

37.    The arbitrator then reviews the offers and "shall . . . select one of the offers" after "taking into account the considerations in subparagraph (C)," which are: the qualifying payment amounts . . . for the applicable year for comparable services that are furnished in the same geographic region and any additional information that is submitted, including the level of training, experience, and quality and outcomes measurements of the physician, the market share held by the physician or that of the plan in the geographic region in which the item or service was provided, and demonstrations of good faith efforts (or lack of good faith efforts) made by the physician to enter into network agreements and, if applicable, contracted rates with the health plan during the previous four plan years. 42 U.S.C. § 300gg-111(c)(5)(C)(i), (ii).

38.    The qualifying payment amount ("QPA") is defined by the Act as the "median of the contracted rates recognized by the" insurer as of January 31, 2019 in the same insurance market for "the same or similar item or service" provided by a provider "in the same or similar specialty and . . . geographic region," increased by inflation over the base year. 42 U.S.C. § 300gg-111(a)(3)(E)(i).

39.     In addition to determining what the arbitrator may consider, the Act also identifies factors that the arbitrator cannot consider: (i) usual and customary charges; (ii) the amount the provider would have billed for the item or service if the Act's billing provisions did not apply; and (iii) the amount a public payer (like Medicare) would have paid. *Id.* § 300gg-111(c)(5)(D).

40.     The Act provides that the determination made in the "independent dispute resolution process" is binding upon the parties and is not subject to judicial review except in cases of fraud, bias, misconduct or where the arbitrator exceeded his or her authority. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

41.     The Act requires that the arbitrator consider each of these factors in determining which offer to select and left it to the discretion and expertise of the arbitrator to decide how much weight to give each factor in light of the facts and circumstances of a particular case. It does not give presumptive weight to any single factor.

42.     Congress did not authorize the Departments to determine how the statutory factors should be considered.

43.     Despite this, the Rule provides that the arbitrator "must presume that the QPA is [the] appropriate" out-of-network rate and "*must* select the offer closest to the QPA" unless the physician "clearly demonstrates" that the QPA is "materially different from the appropriate out-of-network rate." 45 C.F.R. § 149.510(c)(4)(ii)(A) (emphasis added); 86 Fed. Reg. at 55,995.

44.     The Rule further provides that if the arbitrator does not choose the offer closest to the QPA, it must provide a "detailed explanation" as to why it found the QPA to be materially different from the appropriate rate, including a description of "the additional considerations relied upon, whether the information about those considerations submitted by the parties was credible, and the basis upon which the certified IDR entity determined that the credible information demonstrated

that the QPA is materially different from the appropriate out-of-network rate." 86 Fed. Reg. at 56,000.

45.   The Rule provides that the arbitrator need not consider any factor beyond the QPA unless "a party submits information . . . that the certified IDR entity determines is credible." 86 Fed. Reg. at 55,997; *see id*. (entity "must consider" Congress's other five mandated factors only "to the extent credible information is submitted by a party"). There is no such limitation in the Act.

46.   The Rule then defines "credible information" as "information that upon critical analysis is worthy of belief and is trustworthy." 45 C.F.R. § 149.510(a)(2)(v). There is no such requirement in the Act.

47.   The Rule also affirmatively forbids the arbitrator from scrutinizing the QPA. It states, "[I]t is not the role of the certified IDR entity to determine whether the QPA has been calculated by the [insurer] correctly[.]" *See* 86 Fed. Reg. at 55,996. There is no such requirement in the Act.

48.   As the Chairman and Ranking Member of the House Ways and Means Committee have recently explained in a letter to the Secretaries, the Rule "strays from the No Surprises Act in favor of an approach that Congress *did not* enact in the final law," since "Congress deliberately crafted the law to avoid any one factor tipping the scales during the IDR process." https://www.gnyha.org/wp-content/uploads/2021/10/2021.10.04-REN-KB-Surprise-Billing-Letter80.pdf (emphasis added).

49.   A recent letter from 150 other Members of Congress said the same thing. The Rule "do[es] not reflect the way the law was written, do[es] not reflect a policy that could have passed Congress, and do[es] not create a balanced process to settle payment disputes." Letter from Members of Congress to Department Secretaries (Nov. 5, 2021), https://wenstrup.house.gov/uploadedfiles/2021.11.05_no_surprises_act_letter.pdf.

50.    The Act and the Rule effectively allow the health plan to determine the result of the "independent dispute resolution process."

**STATEMENT OF CLAIMS FOR RELIEF**

**COUNT I**

**THE ACT EXCEEDS THE AUTHORITY OF CONGRESS BY REQUIRING PHYSICIANS TO ADJUDICATE THEIR STATE COMMON-LAW CLAIMS FOR PAYMENT BEFORE AN ADMINISTRATIVE TRIBUNAL ESTABLISHED BY CONGRESS**

51.    Plaintiffs repeat and reallege all of the previous allegations in this complaint.

52.    Congress can require that a right it has created be adjudicated by an administrative tribunal it creates.

53.    Congress has no authority to require that a right created by the common law of the State of New York be adjudicated in an administrative tribunal.

54.    Plaintiffs' right to be paid the reasonable value of the services they have provided to patients is established by the common law of the State of New York.

55.    Congress, therefore, has no authority to require that the plaintiffs' claims for the reasonable value of the services they have provided to patients be determined by the "independent dispute resolution process" established by the Act.

56.    The provisions of the Act which require physicians, including the plaintiffs, to submit to the "independent dispute resolution process" their claims for the reasonable value of the services they have rendered to patients are illegal and unconstitutional. They must be set aside and their enforcement must be enjoined.

## COUNT II

**BY REQUIRING PHYSICIANS, INCLUDING PLAINTIFFS, TO SUBMIT THEIR CLAIMS FOR THE REASONABLE VALUE OF THE SERVICES THEY HAVE RENDERED TO PATIENTS TO AN "INDEPENDENT DISPUTE RESOLUTION PROCESS" IN WHICH THERE IS NO JURY TRIAL, THE ACT DEPRIVES PHYSICIANS, INCLUDING PLAINTIFFS, OF THEIR RIGHT TO TRIAL BY JURY UNDER THE SEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

57.     Plaintiffs repeat and reallege all of the previous allegations in this complaint.

58.     The Seventh Amendment to the United States Constitution entitles litigants to a jury trial with respect to any cause of action at law where the amount in issue is more than $20.

59.     A physician's action to recover the reasonable value of services rendered to a patient is an action at law where the measure of damages is *quantum meruit*.

60.     In every, or nearly every, dispute between a physician and a patient or an insurer, the amount in issue is more than $20.

61.     The Act requires physicians to submit their claims for the reasonable value of the services they have provided to patients for determination by the "independent dispute resolution process" established by the Act.

62.     The "independent dispute resolution process" established by the Act is binding on the parties and does not allow for a jury trial.

63.     By requiring physicians to submit their claims for the reasonable value of the services they have provided to patients for determination by a non-judicial body where there is no jury trial, the Act deprives physicians, including Plaintiffs, of their right to a jury trial guaranteed by the Seventh Amendment to the United States Constitution.

## Count III

**By requiring physicians, including plaintiffs, to submit their claims for the reasonable value of the services they have rendered to patients to an "independent dispute resolution process" which is not independent at all because the standard of decision is defined by the adverse party, the health plan, the Act deprives physicians, including plaintiffs, of their right to Due Process of law as guarantied by the Fifth Amendment o the United States Constitution**

64.    Plaintiffs repeat and reallege all of the previous allegations in this complaint.

65.    The Fifth Amendment to the United States Constitution guarantees to each person the right to due process of law.

66.    Due process of law requires an impartial tribunal that will determine the issues before it on the basis of a standard of decision established by law.

67.    Due process of law is denied where one party to the dispute is given the unilateral right to determine the standard of decision.

68.    The Act requires that the "independent dispute resolution process" determine the amount to which a physician is entitled on the basis of the "qualifying payment amounts . . . for the applicable year for comparable services," with the potential to also consider additional circumstances, such as the physician's level of training or experience; acuity of the individual receiving treatment; market share of the physician or health plan; and demonstrations of good faith efforts to enter into network agreements. 42 U.S.C. § 300gg-111(c)(5)(C). The Act specifically excludes consideration of "usual and customary charges;" the amount the provider would have charged had the No Surprise Act not applied; or the amounts payable under Medicare or Medicaid. 42 U.S.C. § 300gg-111(c)(5)(D).

69.    The Act defines the "qualifying payment amount" as the "median of the contracted rates recognized by the" insurer as of January 31, 2019 in the same insurance market for "the same or similar item or service" provided by a provider "in the same or similar specialty and . . .

geographic region," increased by inflation over the base year. 42 U.S.C. § 300gg-111(a)(3)(E)(i).

70.    The Act thus defines the amount to which every physician, including the plaintiffs are entitled to be paid for their services by the amount the health plan has agreed to pay other physicians, subject to the potential consideration of a handful of additional circumstances but expressly excluding consideration of the amount the physician would customarily charge.

71.    By defining the "qualifying payment amount" on the basis of what the health plan has agreed to pay other physicians, while expressly excluding the amounts the physician customarily charges, the Act has given one party to the "independent dispute resolution process" – the health plan – the unilateral right to define the standard by which the outcome of that process will be determined.

72.    The Act therefore deprives physicians, including Plaintiffs, of their property rights to the reasonable value of the services they have rendered without due process of law by allowing health plans to determine the standard by which the "independent dispute resolution process" determines physicians' claims.

## COUNT IV

### BY PROHIBITING PHYSICIANS, INCLUDING PLAINTIFFS, FROM BILLING PATIENTS FOR THE AMOUNTS INSURERS WILL NOT PAY, THE ACT DEPRIVES PHYSICIANS, INCLUDING PLAINTIFFS, OF PROPERTY WITHOUT DUE PROCESS OF LAW AND DOES SO WITHOUT JUST COMPENSATION

73.    Plaintiffs repeat and reallege all of the previous allegations in this complaint.

74.    Physicians, including Plaintiffs, have the right under New York law to be paid the reasonable value of the services they render to patients.

75.    The "independent dispute resolution process" established by the Act does not provide for the payment to physicians of the reasonable value of their services.

76.    Nevertheless, the Act prohibits physicians from billing patients for the reasonable value of the services they have rendered that exceeds the amount determined by the "independent dispute resolution process" as the health plan's responsibility.

77.    By denying to physicians, including the plaintiffs, the right to bill their patients for the reasonable value of the services they have rendered that exceeds the amount determined by the "independent dispute resolution process," the Act deprives Plaintiffs of that property right without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

78.    By denying to physicians, including the plaintiffs, the right to bill their patients for the reasonable value of the services they have rendered that exceeds the amount determined by the "independent dispute resolution process," the Act deprives Plaintiffs of that property right without just compensation in violation of the Fifth Amendment to the United States Constitution.

## COUNT V

### THE RULE'S PRESUMPTION IN FAVOR OF THE QPA IS NOT IN ACCORDANCE WITH LAW AND EXCEEDS DEFENDANTS' STATUTORY AUTHORITY

79.    Plaintiffs repeat and reallege all of the previous allegations in this complaint.

80.    An agency regulation that is inconsistent with the terms of the statute under which it is promulgated is illegal, ultra vires, and void.

81.    The Administrative Procedure Act ("APA") provides that courts will "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

82.    The Act defines the factors that must be considered in the "independent dispute resolution process." 42 U.S.C. § 300gg-111(c)(5)(C).

83.    The Act does not give any one of those factors priority or otherwise dictate how the factors should be weighed in the "independent dispute resolution process." 42 U.S.C. § 300gg-

111(c)(4)(A).

84.   The Rule departs from and is inconsistent with the Act by requiring the independent dispute resolution process" to determine physicians' claims in accordance with the offer closest to the QPA, unless a party "clearly demonstrates that the QPA is materially different from the appropriate out-of-network rate." 86 Fed. Reg. at 55,995.

85.   The Rule is contrary to the statute's plain meaning.

86.   The Rule is an impermissible attempt to rewrite statutory language.

87.   Congress did not delegate to the Departments the authority to promulgate rules requiring that the determination of the "independent dispute resolution process" be based on the QPA.

88.   Promulgating rules requiring that the determination of the "independent dispute resolution process" be based on the QPA is not within the authority of the Departments to "interpret" the Act.

89.   The Departments' attempt to override the language of the statute and upset the balanced approach that Congress required the arbitrator to follow when making payment determinations is ultra vires and contrary to the unambiguous requirements of the No Surprises Act.

### PRAYER FOR RELIEF

For these reasons, Plaintiffs demand judgment against Defendants granting the following relief:

1.   Declaring that the Act: (i) illegally and unconstitutionally requires physicians, including the plaintiffs, to submit their state common law claims for the reasonable value of the services they have provided to patients for adjudication by an "independent dispute resolution

process" established by the Act; (ii) unconstitutionally deprives physicians, including Plaintiffs, of their right to a jury trial guaranteed by the Seventh Amendment to the United States Constitution by requiring them to state common law claims for the reasonable value of the services they have provided to patients for adjudication in a process that does not provide for a jury trial; (iii) deprives physicians, including Plaintiffs of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution by requiring them to submit their state common law claims for the reasonable value of the services they have provided to patients for adjudication by an "independent dispute resolution process" in which the standard of decision is established by the adverse party; and (iv) deprives physicians, including Plaintiffs, of their property right to reasonable compensation for the services they have provided to patients without just compensation, in violation of their rights under Fifth Amendment to the United States Constitution, by denying to them the right to bill patients for the balance of their reasonable fees in excess of the amount determined by the "independent dispute resolution  process;" and

2.   Declaring that the Departments acted unlawfully by promulgating the Rule establishing a presumption in the "independent dispute resolution process" in favor of the QPA; and

3.   Vacating as illegal and unconstitutional 42 U.S.C. § 300gg-111(c), 42 U.S.C. § 300gg-131 and 300gg-132; and

4.   Vacating the provisions of the Rule requiring the "independent dispute resolution process" to employ a presumption in favor of the offer closest to the QPA: 45 C.F.R. § 149.510(a)(2)(v); 45 C.F.R. § 149.510(a)(2)(viii); the second and third sentences of 45 C.F.R. § 149.510(c)(4)(ii)(A); the final sentence of 45 C.F.R. § 149.510(c)(4)(iii)(C); 45 C.F.R. § 149.510(c)(4)(iv); and 45 C.F.R. § 149. 510(c)(4)(vi)(B); 26 C.F.R. § 54.9816-8T(a)(2)(v); 26 C.F.R. § 54.9816-8T(a)(2)(viii); the second and third sentences of 26 C.F.R. § 54.9816-

8T(c)(4)(ii)(A); the final sentence of 26 C.F.R. § 54.9816-8T(c)(4)(iii)(C); 26 C.F.R.; § 54.9816-8T(c)(4)(iv); and 26 C.F.R. § 54.9816-8T(c)(4)(vi)(B); 29 C.F.R. § 2590.716-8(a)(2)(v); 29 C.F.R. § 2590.716-8(a)(2)(viii); the second and third sentences of 29 C.F.R. § 2590.716-8(c)(4)(ii)(A); the final sentence of 29 C.F.R. § 2590.716-8(c)(4)(iii)(C); 29 C.F.R. § 2590.716-8(c)(4)(iv); and 29 C.F.R. § 2590.716-8(c)(4)(vi)(B); and

5. Enjoining and prohibiting the Departments from enforcing these provisions; and

6. Enjoining and prohibiting the Departments from promulgating replacement provisions without notice and comment; and

7. Awarding to the plaintiffs the attorneys' fees and costs they have incurred in this action, pursuant to 28 U.S.C. § 2412; and

8. Granting any other relief the Court determines to be just and proper.

Yours, etc.

**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP**
*Attorneys for Plaintiffs-Petitioners*

By: _____
Robert A. Spolzino, Esq.
Edward A. Smith, Esq.
Justin T. Kelton, Esq.
81 Main Street, Suite 306
White Plains, NY 10601
(914) 607-7010

Dated: White Plains, New York
December 31, 2021

18